UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| CURTIS TEMPLE,<br><br>    Plaintiff,<br><br> vs.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | CIV. 20-5065-JLV<br><br>ORDER |

**INTRODUCTION**

Defendant United States of America filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). (Docket 7). Along with its motion to dismiss, the United States filed a brief in support of the motion to dismiss and a declaration of Chris Haines with attached exhibits. (Dockets 8 & 9). Plaintiff Curtis Temple filed a memorandum in opposition to the motion to dismiss. (Docket 12). The United States filed a reply. (Docket 13).

**FACTUAL BACKGROUND**

Mr. Temple's complaint alleges a cause of action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et. seq.*, and asserts federal jurisdiction exists over the matter pursuant to 28 U.S.C. § 1346(b). (Docket 1 at p. 1). His claim stems from events in June 2018, as a result of which he alleges "[e]xtensive damage was done to [his] private land" for which he is

seeking "damages in the amount of $600,000." Id. at pp. 2 & 3.  Specifically, Mr. Temple alleges:

> On or about from June 11 to June 15, 2018, employees and agents of Oglala Sioux Tribe Rural Water, with the consent, knowledge, approval, and understanding of defendant, and without the permission and consent of plaintiff, trespassed and went upon . . . land [located near Rockyford, South Dakota,] owned by plaintiff and, without consideration paid to him, proceeded to excavate from and transport off the land 200 tons of earth and dirt.  Some or all of the earth and dirt excavated was transported to and used to improve land owned or leased by an employee of Oglala Sioux Tribe Rural Water.

Id. at p. 2.  Mr. Temple represents to the court that he previously filed an administrative claim with the United States Department of the Interior, Bureau of Reclamation ("BOR") based on the same allegations and seeking $600,000 in compensation for the damage allegedly done to his private land.  Id. at p. 3.  BOR denied the claim on May 10, 2020.  Id.  Mr. Temple timely filed his complaint within six months of the denial of his administrative claim.  Id.; see 28 C.F.R. § 14.9(a).

In its brief in support of its motion to dismiss, the United States clarifies Mr. Temple's administrative claim under the FTCA "specified that it was Chuck Jacobs, an Oglala Sioux Tribe employee who allegedly trespassed on and excavated the land." (Docket 8 at pp. 1-2).  Mr. Jacobs was the director of the Oglala Sioux Tribe's Department of Water Maintenance and Conservation ("DWMC") at the time of the alleged events in June 2018.  See id. at p. 4.

The BOR and the Oglala Sioux Tribe have a self-determination contract, Cooperative Agreement No. 4-FC-60-604080 ("Cooperative Agreement"), pursuant to the Indian Self-Determination and Education Assistance Act of

1975 ("ISDEAA"), Public Law 93-638, and the Mni Wiconi Project Act of 1988, Public Law 100-516.  See id. at p. 2.  "Under the terms of the Cooperative Agreement, the Oglala Sioux Tribe, through its [DWMC], operates and maintains the water distribution system funded by the United States, through the BOR," on the Pine Ridge Reservation.  Id. at p. 3.  "The BOR provides technical and administrative assistance" to the DWMC.  Id.  "Each fiscal year, the BOR and the Oglala Sioux Tribe enter into modifications of the [Cooperative] Agreement to provide for the operation and maintenance and replacement ["OM&R"] work" to be performed by the DWMC on the water distribution system that year and the "desired financial commitment" from the BOR to fund that OM&R work.  Id. at p. 4.  OM&R program funds cannot be used for any activities beyond the scope of the Cooperative Agreement and applicable annual modifications or agreements.

On June 6, 2018, Mr. Jacobs sent a memo to the tribe's executive director and comptroller, Dean Patton, requesting authorization to use a DWMC excavator "to repair . . . wash outs on . . . the fire trail road that starts at the intersection at the Rockyford Ranger Station."  (Docket 9-4).  Mr. Jacobs stated he was "building buffalo fence on Grazing Unit #P514" and his contractor could not "get his equipment and materials to the fence lines being constructed" unless the fire trail road was repaired.  Id.

On July 1, 2018, the BOR, via one of its civil engineers, Chris Haines, was alerted to the events that are the subject of this case when Mr. Haines received an email notifying him of Mr. Temple's administrative claim alleging

3

trespass on and destruction of Mr. Temple's land by Mr. Jacobs. See Docket 9 at p. 2 & Docket 9-3. The BOR contacted Oglala Sioux Tribal President Troy Scott Weston on August 17, 2018, to notify President Weston it had "been notified that [DWMC] has recently conducted work using equipment, staff, and resources on activities outside of those authorized under" the Cooperative Agreement at the direction of Mr. Jacobs. (Docket 9 at p. 4). The BOR "requested that the Tribe provide a written response documenting all non-program work, specifically including any resources . . . used in non-program activities, documentation showing the [DWMC] has been reimbursed by the Tribe or responsible party for non-program costs, and certification by the Tribe that Program resources funded through [the BOR] have not been used on any non-program activities." Id.

President Weston responded on August 31, 2018, providing "a copy of an invoice documenting program resources used in non-program activities, a personal check for the amount [of] the invoice for non-program activities, and a copy of a receipt from the [tribe's] Revenue Office documenting the submittal." Id. The invoice is from the DWMC to Mr. Jacobs for the amount of $1,280.62 and indicates a "semi-lowboy trailer and a CAT 322B excavator were moved to . . . near Rockyford on June 10, 2018[,] and that the excavator was utilized for 4 hours." Id. at p. 5. It "documents time/labor and mileage for two employees on June 13, 2018." Id. And it charges "mileage for the semi lowboy trailer, time and labor for four employees, and three other vehicles" on June 14, 2018. Id. The personal check, dated August 30, 2018, is from Mr. Jacobs and made

4

payable to the DWMC in the amount of $1,280.62.  Id.  The receipt from the tribe's Revenue Office dated August 31, 2018, confirms submittal and deposit of the check.  Id.

The United States asserts the "BOR did not direct or authorize [Mr.] Jacobs' use of the [DWMC] equipment." (Docket 8 at p. 7).  "The BOR did not learn of [Mr.] Jacobs' unauthorized actions until after they occurred," and, as the BOR's August 17, 2018, communication with President Weston and the copies of the documents attached to President Weston's August 31, 2018, response indicate, the "BOR sought reimbursement because those activities were outside the scope of the Cooperative Agreement." Id. at pp. 7-8.  The United States submits Mr. Jacobs' actions at issue in this case "were not carrying out the Cooperative Agreement" between the BOR and DWMC and, therefore, "the federal government, acting through the BOR, is not liable for [Mr.] Jacobs' actions on [Mr.] Temple's land." Id. at p. 8.

## LEGAL STANDARD

Rule 12 of the Federal Rules of Civil Procedure provides in part that "a party may assert the following defense[] by motion: . . . lack of subject-matter jurisdiction . . . ." Fed. R. Civ. P. 12(b)(1).  "In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) (internal citation omitted).  "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion [to dismiss] is

successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." Id. (internal citation omitted).

This case involves a factual attack under a Rule 12(b)(1) motion, that is, a factual challenge to "the trial court's jurisdiction—its very power to hear the case[.]" Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990). In resolving a factual attack "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff [has] the burden of proof that jurisdiction does in fact exist." Id.

This claim is filed under the FTCA, which waives the federal government's sovereign immunity and confers jurisdiction on the district courts in "civil actions on claims against the United States, for money damages . . . for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

The FTCA's waiver of sovereign immunity and conferral of jurisdiction on the district courts extends to certain "claims resulting from the performance of functions . . . under a contract, grant agreement, or cooperative agreement authorized by the [ISDEAA]" by a "tribal employee." Pub. L. No. 101-512, Title

III, § 314, 104 Stat. 1915, 1959-60 (1990).  In this context, a tribal employee is deemed a federal employee "while acting within the scope of their employment in carrying out the contract or agreement."  Id.  A claim brought against a tribal employee in this context is therefore "deemed to be an action against the United States and [is] defended by the Attorney General and [] afforded the full protection and coverage of the [FTCA]."  Id.

The United States Court of Appeals for the Eighth Circuit has not explicitly addressed when a challenged action or omission by a tribal employee falls within the ambit of the waiver of sovereign immunity in § 314, thereby subjecting the United States to potential tort liability under the FTCA.  The Ninth and Eleventh Circuits have, however.  See Shirk v. U.S. ex rel. Department of Interior, 773 F.3d 999 (9th Cir. 2014) and Colbert v. United States, 785 F.3d 1384 (11th Cir. 2015).

The Ninth Circuit employs a two-part test.  First, a court "must determine whether the alleged activity is, in fact, encompassed by the relevant federal contract or agreement."  Shirk, 773 F.3d at 1006.  Second, a court "must decide whether the allegedly tortious action falls within the scope of the tortfeasor's employment under state law."  Id.  "If both of these prongs are met, the employee's actions are covered by the FTCA," but "a plaintiff's failure at either step is sufficient to defeat subject matter jurisdiction."  Id.  The Eleventh Circuit takes a more streamlined approach and requires a court to determine whether the employee was "engaged in 'carrying out' functions authorized in or

7

under a self-determination contract"—i.e., whether the employee was "act[ing] or perform[ing] under the contract." Colbert, 785 F.3d at 1391.

## ANALYSIS

The issue here is whether Mr. Jacobs, a tribal employee of the DWMC, was acting within the scope of his employment in carrying out the Cooperative Agreement between the BOR and the DWMC when he allegedly trespassed onto and damaged Mr. Temple's land in June 2018. If he was, the FTCA's waiver of sovereign immunity and conferral of jurisdiction on the district courts, as extended by § 314 to certain claims resulting from the performance of functions under ISDEAA self-determination contracts or cooperative agreements by a tribal employee, applies, subjecting the United States to potential tort liability and giving the court subject matter jurisdiction to hear this case. If he was not, the court lacks subject matter jurisdiction to hear this case.

Whether the court applies the Ninth Circuit's or the Eleventh Circuit's approach to the issue, the result is the same. The court finds Mr. Temple has not met his burden of proof that the court has subject matter jurisdiction to hear this case.

Mr. Temple has failed to identify in any way that Mr. Jacobs' alleged conduct in June 2018 was related to program activities pursuant to the Cooperative Agreement between the BOR and the DWMC for the operation and maintenance of the reservation water system. He points to no provision in the original Cooperative Agreement or in the modification agreement applicable to

the fiscal year covering June 2018 that would cover Mr. Jacobs' alleged conduct.  See Dockets 9-1 & 9-2.  In fact, to the contrary, Mr. Jacobs himself identified the personal nature of the work in his request to use the excavator.  In his June 6, 2018, memo to Mr. Patton, Mr. Jacobs explains he planned to use the equipment to repair wash outs along a fire road to enable his personal contractor to access a section of buffalo fencing he was installing on a tract of grazing land he leased.  The subsequent communications between the BOR and President Weston in August 2018 and the documentation provided by President Weston to the BOR at that time showing Mr. Jacobs personally reimbursed the tribe to cover his use of tribal equipment and resources are further indication that Mr. Jacobs' activities in June 2018 were of a personal nature and recognized by all parties who became aware of the activities— perhaps with the exception of Mr. Temple.

     Accordingly, Mr. Temple fails to meet the first prong of the Shirk test by showing that Mr. Jacobs' "alleged activity" is "encompassed by" the Cooperative Agreement between the BOR and the DWMC.  Shirk, 773 F.3d at 1006.  He has similarly failed to show that Mr. Jacobs was "'carrying out' functions authorized in or under" the Cooperative Agreement and thus "act[ing] or perform[ing] under" its terms.  Colbert, 785 F.3d at 1391.  Section 314's waiver of sovereign immunity therefore does not apply, and the court lacks subject matter jurisdiction to hear this case.

## ORDER

     Based on the above analysis, it is

9

ORDERED that defendant's motion to dismiss (Docket 7) is granted.

IT IS FURTHER ORDERED that plaintiff's complaint (Docket 1) is dismissed without prejudice.

Dated September 20, 2021.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE